# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Vincent Ferro

v.

Carissa Marie Shifflett

November 29, 2006

Case No. (Law) 64537

BY JUDGE LEROY F. MILLETTE, JR.

This cause is before the Court on Defendant Shifflett's Plea in Bar of Sovereign Immunity. It is the ruling of this Court that the Defendant's Plea in Bar be overruled. This Court is of the opinion that the Defendant's acts were ministerial and not subject to discretion or judgment by the Defendant. The Court sets forth below its reasoning behind its ruling today.

## I. *Facts*

The Plaintiff, Vincent Ferro, filed a Motion for Judgment with this Court on February 2, 2005, naming Carissa Marie Shifflett a defendant in his action to recover for damages and injuries suffered from an automobile collision that occurred on February 5, 2003. Plaintiff alleges that Defendant Shifflett, while attempting to turn left from Georgetown Road onto Route 1, operated her sedan in a negligent manner proximately causing a collision with Plaintiff's van while the Plaintiff was traveling northbound on Route 1, resulting in permanent injury to the Plaintiff. The Motion also asked that that Assurance Company of America also be served as carrier of uninsured motorist coverage pursuant to Va. Code Ann. § 38.2-2206 (2006). In response to the Motion for Judgment, the Defendant filed a Plea in Bar to invoke sovereign immunity privileges. Accordingly, counsel for the Defendant and

counsel for the Assurance Company of America each submitted memorandum of law, and argument was heard *ore tenus* on November 6, 2006.

Testimony established that the Defendant, at the time of the accident, was a Prince William County employee working for the County's Department of Social Services with the job grade of Social Worker II in the Department's Foster Care Unit. Defendant was qualified for the position by having not only a Masters level degree but also experience working in the field of Social Work for Fairfax County. Defendant's duties with the Foster Care Unit included managing case loads of eighteen to twenty-five cases at any one time by assessing foster children's needs, facilitating a safe home environment, and evaluating educational needs and living conditions through ongoing home visits.

The Chief of Family Services for the County, Lori Wilson, further testified as to the qualifications for obtaining the Defendant's position. Those requirements include a valid driver's license, a Department of Motor Vehicles check, a criminal background check, required course work for Virginia Social Workers, and a willingness to respond to emergency situations. The Defendant's job itself required the Defendant to develop relationships with the children whose care she was managing and would occasionally require the Defendant to transport children under her management to foster homes, group homes, the hospital, or a mental health facility if necessary. However, the Defendant was not required to obtain a special operators license for motor vehicle transportation of children in her care, nor did the Defendant receive specific training on operating a County vehicle in particular, nor did the County vehicles provided to the Defendant have special equipment not found in common vehicles. Finally, Social Workers, like the Defendant, are not permitted to circumvent state and local laws or ordinances regarding motor vehicle operation under any circumstances.

The Defendant testified that, on the day of the accident, she had received a voice-mail message from the Prince William County Police Department that a minor, whose case was under the Defendant's management and who had been reported by the Foster Care Unit as a "runaway," was located at an area home, and the voice-mail also provided the address to the Defendant. The Defendant, in accordance with her duties as a Social Worker, determined after discussion with her staff unit that the child should be taken to a shelter pending further evaluation. The Defendant called the minor to explain that she would be meeting her at the home at which she was staying and signed out a County vehicle for the purpose of transporting the minor child according to County policy.

After meeting the minor child at the home and address where the Police Department reported the minor to be, the Defendant explained to the minor

that the she could not remain at the home as it was not a pre-approved foster-home. Though the minor was visibly upset, she agreed to pack her belongings and ride with the Defendant to the shelter. The Defendant testified that she opted to take the route she chose to transport the minor child to the shelter rather than her "preferred way" because it would be twenty minutes faster. However, there was no requirement that the minor report to the shelter by a specified time nor did the Defendant testify as to any exigency in having the minor at the shelter by a specific time.

## II. *Issue*

The sole question to be answered in determining whether or not to sustain Defendant's plea in bar is whether or not the Defendant should be cloaked with sovereign immunity, effectively precluding the Plaintiff from continuing to seek relief through his Motion for Judgment against Defendant.

## III. *Discussion*

In deciding whether or not the Defendant county employee is entitled to the protection of sovereign immunity, this court acknowledges the four-factor test outlined by the Virginia Supreme Court and utilizes its framework in making its conclusion. *See, Friday-Spivey v. Collier*, 268 Va. 384, 387, 601 S.E.2d 591, 593 (2004) (citing *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980); *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984)). "The four factors are: (1) the function performed by the employee, (2) the extent of the state's interest and involvement in that function, (3) the degree of control and direction the state exercises over the employee, and (4) whether the act performed involves the use of judgment and discretion. *Friday-Spivey*, 268 Va. at 388, 601 S.E.2d at 593. The crux of the analysis in this case involves the fourth factor, whether the act performed by the Defendant involves the use of judgment and discretion. Though seemingly a straightforward task, this Court also recognizes that "the line demarcating the boundary of sovereign immunity in Virginia is indistinct[.]" *Muse v. Schleiden*, 349 F. Supp. 2d 990, 994 (2004). Accordingly, this Court has looked closely at the precedent governing its decision.

Defendant argues that the facts of this case are most analogous to those that led to the Supreme Court's Decision in *Linhart v. Lawson*, 261 Va. 30, 540 S.E.2d 875 (2001). In *Linhart*, the Supreme Court affirmed the trial court's findings that a Norfolk City School Board employee employed as a bus driver "was entitled to immunity for acts of simple negligence under the standards set out in *Messina v. Burden*." *Linhart*, 261 Va. at 36, 540 S.E.2d at 878. The Court

succinctly reasoned that "the act complained of, transporting school children, involved discretion and judgment." *Id.* at 36, 878. The Defendant asks this Court to contrast the *Linhart* holding with the Supreme Court's ruling in *Wynn v. Gandy*, where the Court denied immunity to a school bus driver who was not transporting any school children at the time of the alleged negligence. 170 Va. 590, 197 S.E. 527 (1938). In doing so, the Defendant asks this Court to adopt the line of reasoning espoused by Justice Kinser in dissenting to the majority opinion in *Friday-Spivey*, 268 Va. at 391, 601 S.E.2d at 595 (J. Kinser dissenting). Justice Kinser explained, "[a] review of [other Virginia Supreme Court] cases illustrates that whether the act in question involves the exercise of judgment and discretion generally turns on whether effectuating the governmental purpose embraces 'special risks'." *Id.* at 392, 596 (J. Kinser dissenting). Justice Kinser explains that "[t]he 'special risks' connected with the act of transporting school children in a bus [as opposed to merely operating an empty school bus] are apparent." *Id.* at 393, 597 (J. Kinser dissenting). Likewise, the Defendant's argument would have this Court focus on the 'special risks' a social worker faces and inherent in transporting a runaway child, those risks being the necessity of the Defendant to:

> process the information she received about the seriousness of the situation; decide on the direction she had to travel; decide whether and how to communicate with the runaway child; observe the child for signs of distress and judge whether the child demonstrated at-risk behavior, consider strategies for assisting the child upon arrival at the shelter, and make myriad other judgments and decisions.

*Def. Mem. in Supp. of Plea in Bar*, at 6. Dealing with these "risks" would require the use of discretion and judgment meeting the final factor of the *Messina* framework and therefore qualify the Defendant for sovereign immunity from acts of simple negligence. This is so, argues the Defendant, despite the Defendant's testimony there was no difference in the way the vehicle was driven at the time of the collision than at any other time she would operate a motor vehicle under normal circumstances.

Though the Defendant's argument is not without merit, this Court finds it inapplicable to the case at bar. The "Special Risks" analysis was first discussed by the Virginia Supreme Court in *Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991). *Colby* was "the first instance in which [the Virginia Supreme Court] had occasion to apply [the *Messina* test] to the actions of a police officer engaged in vehicular pursuit." *Colby*, 241 Va. at 129, 400 S.E.2d at 187. The Court found that "[u]nlike a driver in routine traffic, the

officer must make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation." *Id*. "Such situations" the Court established, "involve necessarily discretionary, split-second decisions balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective." *Id*. It appears to this Court that the "Special Risks" analysis is reserved for Defendants who are presented with decisions that entail "grave personal risks" or "public safety concerns" and because of their position are entitled to circumvent local laws to effectuate their duties. Hence, *Heider v. Clemons*, 241 Va. 143, 145, 400 S.E.2d 190, 191 (1991) (deputy sheriff returning from serving process, not entitled to immunity); *Nationwide Mutual Ins. Co. v. Hylton*, 260 Va. 56, 530 S.E.2d 421 (2000) (officer who had made decision to pursue traffic infraction moments before collision, entitled to immunity); *Muse v. Schlieden*, 349 F. Supp. 2d 990 (2004) (officer responding to domestic violence call, entitled to immunity).

This Court finds greater support and similarity to the matter before it in the case of *Friday-Spivey v. Collier*. 268 Va. 384, 601 S.E.2d 591. In *Friday-Spivey*, a firefighter operating a fire truck was "responding to a Priority 2 call" when he collided with another vehicle. *Friday-Spivey*, 260 Va. at 386, 601 S.E.2d at 592. The firefighter testified at a plea in bar hearing that he had no reason to believe there was any emergency or danger involved in the call and thus "he was required to proceed without activating warning devices ... and to obey all statutes governing the operation of motor vehicles." *Id*. at 387, 592. The Defendant argued in *Friday-Spivey* that "he [was] entitled to sovereign immunity because the inherent difficulty and special skills required in operating a specialized piece of equipment means he "is not like any other driver in routine traffic." *Id*. at 387-89, 593. The Supreme Court disagreed. The facts showed that the firefighter "was in routine traffic under a mandate 'to respond in a non-emergency manner and to conform to all the traffic regulations'." *Id*. at 391, 595. Therefore, the defendant's "driving was a ministerial act requiring no significant judgment and discretion beyond that of ordinary driving in routine traffic." *Id*. Moreover, "[n]othing in [the] record reflect[ed] that any special characteristic of the fire truck had any nexus whatsoever to the accident." *Id*. Not presented with a "Special Risks" situation, the *Friday-Spivey* Defendant was engaged in a ministerial act of driving and not entitled to the cloaking of sovereign immunity.

What is true of the Defendant is that she was effectuating a duty for the job for which she was hired to perform at the time of the collision and not merely en route to or from that duty. *See, Stanfield v. Peregoy*, 245 Va. 339, 345, 429 S.E.2d 11, 14 (1993) (Snow plow and salt vehicle driver engaged in act of plowing entitled to immunity as court found sufficient judgment and

discretion in act of "performing government function while operating vehicle" during collision). However, this Court believes that sovereign immunity should be denied. The facts show that the Defendant was driving in routine traffic. The Defendant is not authorized by her job to circumvent or disregard traffic laws and ordinances even if presented with a public safety concern or grave personal risk and therefore the "special risks" analysis does not apply in this case. Moreover, there was nothing different about the way the vehicle was driven by the Defendant, with the exception of choosing a less preferred route, than the way she would operate a vehicle in any normal circumstance. Though she may have been effectuating the purpose for which she was hired to perform and fulfilling a duty required of her by her job by transporting a child under her care, her position is not so intertwined with the act of driving to allow her to exercise the judgment and discretion necessary to fulfill the fourth factor in the *Messina* test. This Court must find "[w]hile every person driving a car must make myriad decisions, in ordinary driving situations, the duty of care is a ministerial obligation." *Heider v. Clemons*, 241 Va. 143, 145, 400 S.E.2d 190 (1991). Consequently, sovereign immunity coverage must be denied and the plea in bar overruled.

## IV. *Conclusion*

It has been said that sovereign immunity is "alive and well" in Virginia. Though this much is certain, little else about the topic can be said with absolute conviction. The case law does reflect, though, that the "special risks" analysis does not apply to the Defendant in this case. This Court recognizes the importance of its Social Services Department and acknowledges the work of its social workers, and, while it cannot be denied that the defendant was performing a task required of her by her job, the transportation of an upset teenager in a county owned sedan, without more, does not involve the exercise of sufficient levels of judgment and discretion to give rise to the coverage of sovereign immunity. The Defendant's plea is overruled.