# CIRCUIT COURT OF THE CITY OF ROANOKE

Leshan M. Hutchinson

v.

Christopher Gunter
and Ashley Kay Hill

March 3, 2016

Case No. CL14-1425

By Judge David B. Carson

This matter is before the Court on a Plea in Bar filed by Defendant Christopher Gunter ("Def. Gunter"). On January 12, 2016, the Court heard evidence from various parties and witnesses. Having considered and reviewed the relevant testimony, pleadings, transcripts, and arguments of counsel, the Court finds that Def. Gunter is entitled to sovereign immunity, and, accordingly, grants Def. Gunter's Plea in Bar for the reasons explained below.

*Facts*

This case arises out of an automobile accident that occurred on March 11, 2013, at the intersection of Orange Avenue and Plantation Road in the City of Roanoke. Ms. Leshan Hutchinson was heading east on Orange Avenue, but was stopped at the traffic light waiting to make a left turn onto Plantation Road. Def. Gunter was traveling south on Plantation Road, but was also stopped at the traffic light, with one car stopped at the light in front of him. (At all relevant times on March 11, 2013, Def. Gunter was employed as a Roanoke County police officer.) Ms. Ashley Hill ("Def. Hill") was traveling west on Orange Avenue towards its intersection with Plantation Road.

The specific facts relating to the accident itself are disputed between the parties. After having heard and assessed the credibility of the parties and their witnesses, the Court finds that the pertinent facts of the accident are as follows.

While Def. Gunter was stopped at the intersection of Plantation Road and Orange Avenue, he learned through his patrol radio that a theft had occurred at a Walmart, which was reasonably close in proximity to Def. Gunter's location. The theft was classified as a Priority 2 call and did not require Def. Gunter's immediate response. However, while Def. Gunter was still stopped at the intersection, the call was elevated to Priority 1 status, reflecting a danger to the public safety, as the theft had turned into a foot pursuit of the suspect. Knowing that Priority 1 calls require immediate response by any officers in the area, on-duty or off-duty, and believing that he might have been the officer who was in closest proximity to render assistance, Def. Gunter responded to the call.

Although disputed, the Court is satisfied that, after the call was elevated to Priority 1 status, Def. Gunter engaged his emergency lights and sounded his sirens at least one time, if not more times or continuously, such that the car in front of Def. Gunter yielded to allow him to enter the intersection. Def. Gunter proceeded into the intersection with his lights still activated. Though Def. Gunter's actual speed as he passed through the intersection is unknown, the Court is satisfied that Def. Gunter's speed was not excessive.

As Def. Gunter proceeded through the intersection, Def. Hill failed to yield to Def. Gunter's vehicle and swerved to avoid colliding with him. As a result, Def. Hill crossed over the center line of Orange Avenue and collided with Plaintiff's vehicle, injuring Plaintiff.

*Analysis*

A. *Governing Rules of Law*

A plea in bar is a "discrete form of defensive pleading that does not address the merits of the issues; instead, it alleges a single state of facts or circumstances which, if proven, constitutes an absolute defense to the claim." *Virginia Civil Benchbook for Judges and Lawyers*, § 2.07[2] at 2-9 (citing *Station # 2, L.L.C. v. Lynch,* 280 Va. 166 (2010); *Hawthorne v. VanMarter,* 279 Va. 566 (2010)). A plea in bar "reduce[s] litigation to a distinct issue of fact," and therefore can dispose of the entire suit. *Smith v. McLaughlin,* 289 Va. 241, 252, 769 S.E.2d 7, 12–13 (2015) (citing *Schmidt v. Household Fin. Corp., II,* 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008)). One such plea in bar is the plea of sovereign immunity, which, if proven, "creates a bar to a plaintiff's claim of recovery." *Brooks v. City of Roanoke,* 89 Va. Cir. 439 (City of Roanoke 2015) (quoting *City of Chesapeake v. Cunningham,* 268 Va. 624, 633, 604 S.E.2d 420, 426 (2004) (internal quotations omitted)). Where sovereign immunity is applicable, a plaintiff can only defeat this protection by establishing gross negligence. *See Colby v. Boyden,* 241 Va. 125, 131–32, 400 S.E.2d 184, 188–89 (1991).

The concept of sovereign immunity, which generally prevents recovery against the state or municipality (or its actors) in tort, is "alive and well"

in Virginia." *Messina v. Burden,* 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984). Sovereign immunity protection is rooted in public policy. Specifically, it exists in large part to "prevent[] citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation," to ensure the efficient operation of government, and to encourage governmental officials to act in the best interest of the state or municipality without the threat of a lawsuit. *Id.* at 308, 321 S.E.2d at 660. Virginia courts employ a four-part analysis in determining whether a governmental employee is entitled to sovereign immunity. *See, e.g., id.* at 313, 321 S.E.2d at 663; *James v. Jane,* 221 Va. 43, 53, 282 S.E.2d 864 (1980); *see also, generally, Rafter v. Miller,* 87 Va. Cir. 274, 275 (City of Chesapeake 2013) (citing *Messina,* 228 Va. at 313, 321 S.E.2d at 663). The four factors analyzed are: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *See, e.g., Messina,* 228 Va. at 313, 321 S.E.2d at 663; *James,* 221 Va. at 53, 282 S.E.2d at 869. In cases involving state or municipal employee drivers, the most determinative factor is the last. *Rafter,* 87 Va. Cir. at 275.

The Supreme Court of Virginia has held that routine driving activities are ministerial functions which do not give rise to the cloak of sovereign immunity. *Heider v. Clemons,* 241 Va. 143, 145, 400 S.E.2d 190, 191 (1991) ("[T]he simple operation of an automobile did not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer."); *see also Friday-Spivey v. Collier,* 268 Va. 384, 601 S.E.2d 591 (2004) (finding that the driver of a fire truck, which truck required specialized training to operate, was not entitled to sovereign immunity when delivering equipment which was necessary to rescue an infant from a locked car because he was driving in routine traffic and ordered to obey all traffic laws). This Court also reaffirmed this principle as it relates to routine driving situations. *Fitzgerald v. Perry,* 84 Va. Cir. 96, 98 (Roanoke County 2012). But where the act of driving requires discretion and judgment unique to the driving situation, a "substantial government interest" is implicated and sovereign immunity is very often appropriate. *Rafter,* 87 Va. Cir. at 276 (discussing several Supreme Court of Virginia cases endorsing this principle); *see, e.g., Linhart v. Lawson,* 261 Va. 30, 36, 540 S.E.2d 875, 878 (2001) (holding that a school bus driver was entitled to sovereign immunity because "the transportation of children in a school bus is a governmental function in which the government has a substantial interest and over which the government exercises significant control . . . [and because] the act complained of, transporting school children, involved discretion and judgment"); *Stanfield v. Peregoy,* 245 Va. 339, 343–44, 429

S.E.2d 11, 13–14 (1993) (finding that a snow plow driver was entitled to sovereign immunity because keeping city streets safe is a governmental function that rises above simple routine operation and because the snow plow driver had to exercise judgment and discretion).

Analyzing whether a law enforcement officer-driver is entitled to sovereign immunity depends on the facts of the case and the actions of the officer. One circuit court has held that, if a law enforcement officer is "[d] riving down a major roadway at excessive speeds to the scene of a non-emergency, where the preservation of human life is not a concern, [this] is not integral to furthering this interest and function." *Lake v. Mitchell,* 77 Va. Cir. 14, 20 (Prince George County 2008) (holding that an officer who was driving to a site of a suspected homicide was not entitled to sovereign immunity because there was no evidence of an immediate threat to public safety). The Supreme Court of Virginia, on the other hand, held in *Colby v. Boyden* that an officer pursuing a fleeing suspect was entitled to sovereign immunity for the torts he committed while running a red light and colliding with the plaintiff's automobile. 241 Va. at 128–30, 400 S.E.2d at 186–87.

Plaintiff cites two Virginia Code sections, §§ 46.2-829 and 46.2-920, as support for its claim against Def. Gunter. Section 46.2-829 imposes on motorists the duty to yield the right-of-way to emergency vehicles, but also states "This provision shall not relieve the driver of any such vehicle to which the right-of-way is to be yielded of the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequences of an arbitrary exercise of such right-of-way." Va. Code Ann. § 46.2-829. Section 46.2-920 exempts drivers of emergency vehicles from following certain traffic rules, but requires that, in order to be granted an exemption, the driver must be: (1) displaying an emergency light; and (2) *either* (a) sound a siren, exhaust whistle, or air horn *or* (b) slow the vehicle down to a speed reasonable for the existing conditions. *See id.* § 46.2-920.

## B. *Application of the Law to the Facts*

Analyzing the oft-cited four factor test, the Court is satisfied that the factors weigh in favor of granting immunity to Def. Gunter. Law enforcement officers, especially those patrolling the streets with their police vehicles, perform the function of protecting the public safety, of which the Commonwealth has a substantial government interest. *See also, generally, Lake,* 77 Va. Cir. at 20 (noting that the employment of law enforcement officers relates directly to the "Commonwealth's interest and function . . . to protect the public safety"). Furthermore, as it relates to the four factor test, it is of critical importance to recognize that this function requires that law enforcement officers exercise a significant amount of discretion, frequently compelling them to make split-second judgments when faced with situations posing harm to the public safety.

Here, Def. Gunter's actions on March 11, 2013, involved a significant amount of discretion. He needed to make a split-second decision in responding to the Priority 1 call, and should not be faulted for doing so. At the hearing, a considerable amount of emphasis was put on the fact that the status of the call to which Def. Gunter was responding was only "Priority 1" for a brief time. *See generally* Hr'g Tr. 36:9-22, 45:14–50:1, January 12, 2016. This emphasis, the Court thinks, was undue. Def. Gunter could not have known that the suspect would be apprehended within a matter of minutes. He needed to act without hesitation. To find otherwise would have the undesirable result of chilling the reactions of our law enforcement officers, who need to respond to every call with the urgency required for it. The facts do not involve the routine transit or non-ministerial operation of a vehicle. Rather, the facts here are much more aligned with *Colby v. Boyden,* where the officer was using his police vehicle to respond to a situation involving a threat to the public safety. Conceding that Def. Gunter very well could have exercised more caution, the Court is not persuaded that his conduct amounted to gross negligence. In Plaintiff's Memorandum in Opposition to Defendant Gunter's Memorandum in Support of Plea in Bar, Plaintiff cites three factors which they claim establish that Def. Gunter was grossly negligent. *See* Pl's Memo. Opp'n to Def. Plea in Bar, Feb. 18, 2016. They argue that (a) Def. Gunter failed to appreciate the dangerousness of the particular intersection in question; (b) Def. Gunter failed to give sufficient warning to motorists; and (c) Def. Gunter moved too far into the intersection without verifying that all approaching vehicles had stopped. *Id.* Much of Plaintiff's arguments on these factors are grounded upon facts which are disputed and which the Court finds were either sufficiently discredited by Def. Gunter's counsel during the hearing or not conclusively established by Plaintiff. And even assuming *arguendo* the truth of the facts undergirding Plaintiff's arguments on these three factors, the Court does not believe that Plaintiff has carried his burden in proving *gross* negligence. Given these considerations, sovereign immunity protection is appropriate in this case.

Furthermore, the Court does not believe that Def. Gunter was in violation of either §§ 46.2-829 or 46.2-920. With regards to § 46.2-829, the evidence does not establish that Def. Gunter disregarded the safety of other motorists. And even if Def. Gunter failed to yield the right-of-way to Def. Hill, the Court cannot conclude that Def. Gunter's actions were arbitrary, such as would warrant removal of the cloak of immunity under the plain language of § 46.2-829.

It cannot be said that Va. Code § 46.2-829 transcends or replaces the concept of sovereign immunity. Indeed, Va. Code § 46.2-829 implicitly concedes its inferiority to the concept of sovereign immunity. It states that the driver of an emergency vehicle is not protected from the consequences of failing to yield the right-of-way only if such actions amount to an "*arbitrary exercise*" of taking the right-of-way. Va. Code Ann. § 46.2-829 (emphasis

added); *see infra.* Subsequently, as long as Def. Gunter's disregard of other motorists was not arbitrary, he should still be afforded protection. *See also Colby,* 241 Va. at 132, 400 S.E.2d at 189 ("[L]egislative abrogation of the common law doctrine of sovereign immunity must be explicit and will not be found by implication.") (citing *Hyman v. Glover,* 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986).

The requirements imposed on drivers such as Def. Gunter in Va. Code § 46.2-920 likewise do not assist Plaintiff here. The Court is satisfied that Def. Gunter had his emergency lights engaged at all relevant times at and before the accident at issue. Subsequently, under the statute, Def. Gunter would be exempted from otherwise following the traffic rules if he either (a) sounded a horn or siren, or (b) slowed his "vehicle down to a reasonable speed for the existing conditions." Def. Gunter has met his burden: the evidence showed that he sounded his horn at least once, if not more, prior to entering the intersection. Moreover, the Court is satisfied that Def. Gunter's speed did not exceed what was reasonable for the existing conditions.

Def. Gunter entered the intersection after having been stopped at a traffic light. This did not involve a situation where Def. Gunter was already in motion and speeding through the intersection. And although Ms. Nehring, one of the Plaintiff's witnesses, testified at the hearing that Def. Gunter went "straight on the gas pedal," she conceded that Def. Gunter did not "floor it" and could not have exceeded around fifteen miles per hour. Hr'g Tr. 77:22–78:12. And while it may be true that Def. Gunter entered the intersection with little to no hesitation, this does not prove *ipso facto* that he was speeding or that his speed was unreasonable under the circumstances. Def. Gunter was responding to a Priority 1 call which required immediate action. *See* Hr'g Tr. 22:1–24:1. One would expect that law enforcement officers act with little or no hesitation when responding to situations which involve a threat to the public safety. Accordingly, the Court once again notes that it is well aware of the potential adverse public policy implications which would accompany the stringent interpretation of § 46.2-920 that Plaintiff desires.

In finding that Def. Gunter had his emergency lights and siren sufficiently engaged, the Court has little difficulty concluding that Def. Hill's testimony to the contrary[1] should be discounted. Def. Hill testified at her deposition on June 29, 2015, when the matter was more fresh in her mind, that she remembered both "seeing" sirens (Hill Dep. 10:2-3, June 29, 2015) and hearing them (*Id.* at 22:12) as well as seeing the "flashing lights of [Def. Gunter's] car." *Id.* at 51:16-18. To accept her testimony on January 12, 2016, would clearly run afoul of the *Massie* doctrine, which prevents parties from rising above their own evidence. *See, e.g., Massie v. Firmstone,* 134 Va. 450, 114 S.E. 652 (1922) (holding that a party may not rise above their own evidence); *see also Crawford v. Quarterman,* 210 Va. 598, 603,

---

[1] Hr'g Tr. at 89:9-14 (Def. Hill denying seeing emergency lights or hearing sirens).

172 S.E.2d 739, 742 (1970) (applying the *Massie* doctrine and stating that a party's case can be no stronger nor rise any higher than his own testimony permits). The widely recognized exceptions to the *Massie* doctrine are also not applicable here as the nature of Def. Hill's initial observations regarding the lights and siren were not mere estimates of speed, distance, or opinion. *See, e.g., Yates v. Potts*, 210 Va. 636, 639, 172 S.E.3d 784, 786–87 (1970) (holding that the *Massie* doctrine does not apply to speed, such as how fast a vehicle was going); *Kelley v. Henley*, 208 Va. 264, 269, 156 S.E.2d 618, 622 (1967) (holding that the *Massie* doctrine does not apply to estimates of distances, such as how far a car travels following an automobile collision); *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 55–56, 419 S.E.2d 627, 629 (1992) (holding that the *Massie* doctrine does not apply to expressions of opinion).

## Conclusion

Having considered all of the evidence before the Court, including the written and oral arguments of counsel, the Court finds that Def. Gunter is entitled to sovereign immunity as a matter of law. His actions involved discretion and judgment, were not arbitrary, were not grossly negligent, and did not violate Va. Code §§ 46.2-829 or 46.2-920. Consequently, the Court grants Def. Gunter's Plea in Bar.